UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANNE COLEMAN, | ) |
| Plaintiff, | ) |
| vs. | ) 09 C 6700 |
| CITY OF CHICAGO and OFFICER ERICK GRADY, Badge #17129, | ) Judge Feinerman |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dianne Coleman brought this action under 42 U.S.C. § 1983 and Illinois law against the City of Chicago, Chicago Police Sergeant George Owen, Jr., and Chicago Police Officer Erick Grady, alleging that she was wrongfully arrested on September 26, 2008, without probable cause and with excessive force. Owen has been has been voluntarily dismissed, and Grady and the City have moved for summary judgment. Coleman concedes that she cannot prevail on her § 1983 *Monell* claims against the City. As to the remaining claims, summary judgment is granted as to the § 1983 false arrest and state law false imprisonment claims, and denied as to the § 1983 excessive force and state law battery claims.

**Background**

According to Coleman, whose account of the facts must be accepted at this stage of the proceedings, she was sitting on the porch outside Dorothy Hosey's residence the afternoon of September 26, 2008. Hosey is the aunt of Carry Williams, Coleman's boyfriend. Coleman helped to take care of Hosey, who suffered from Alzheimer's and dementia, and occasionally collected mail for Hosey and Eleanor Sapp, a tenant in the building, because Hosey had

developed a habit of hiding the mail upon receiving it.  When Coleman went that afternoon to bring Eleanor her mail, Monique Johnson, the girlfriend of Edna Sapp—Eleanor's daughter, who also resided in building—demanded that Coleman give her Eleanor's mail.  According to Coleman, Johnson and Edna on occasion had absconded with Eleanor's benefit checks.

Coleman refused to give Johnson Eleanor's mail, and Johnson attacked her, striking her in the face, tearing her shirt, and scratching her chest.  Coleman backed up the stairs in an attempt to escape; according to her deposition testimony, Coleman never pushed, hit, or kicked Johnson.  Coleman called 911, and Officer Grady and some colleagues arrived on the scene, at which point Coleman was on the porch and Johnson inside.  While Coleman was speaking with two detectives, Eleanor and Johnson came to the porch.  The detectives left, and Coleman told Grady that she had called 911 and wanted to make a report against Johnson.  Grady asked Coleman, "Do you want to go to jail?" and ignored her thereafter.  Grady then spoke with Johnson outside of Coleman's hearing.  Coleman says that Grady "acted as if he knew" Johnson.

Coleman went inside, obtained a pen and paper, stepped back out, and asked Grady for his name and badge number.  Grady repeated, "Do you want to go to jail?", and then grabbed Coleman by the arm, twisting it around her back.  A second officer grabbed Coleman's other arm, and she was placed in handcuffs.  Coleman told Grady that she suffered from back and shoulder spasms and that being handcuffed was causing her pain, and asked that the handcuffs be applied in front, but the request was denied.  While in Grady's squad car on the way to the station, Coleman again told him that she was suffering from painful back spasms due to the handcuffs.  At the station, some time later, another officer released Coleman from the handcuffs after she again called attention to the spasms.

Officer Grady testified that he received a 911 dispatch call reporting a disturbance at Hosey's address. He arrived, heard considerable noise inside, and rang the bell. During his conversation with Johnson, Johnson told him that Coleman had kicked her. As noted above, Coleman was not privy to Grady's conversation with Johnson, so his testimony on that point stands unrebutted. Coleman and Johnson each swore out complaints for battery against the other. Coleman was released on bond late that evening, and the charges against her were dismissed on October 15, 2008.

About two days after the arrest, a doctor examined Coleman's wrists. Coleman saw the doctor because "I wanted to be on record that I had … scars from them handcuffing me." Doc. 80 at 4. Coleman did not mention any injury to her shoulders or back, and did not seek any other medical attention for the harms she allegedly suffered. Coleman testified at her deposition that she still experiences pain in her shoulders due to the incident.

In a notarized September 29, 2008, letter to the Chicago Police Department, Coleman complained about the way she was treated during the arrest, and stated—contrary to her testimony at deposition—that she "kick[ed] [Johnson] with my foot" to defend herself from Johnson's attack. Doc. 82-1 at 2. Coleman also filed a complaint with the Independent Police Review Authority. The complaint included a summary prepared by her interviewer, which stated that Coleman "kicked Johnson away from herself" after Johnson attacked her. Coleman signed the statement, which affirmed, "Having had the opportunity to review the summary statement above and having made any corrections, additions, and/or deletions necessary, I find it to be true and accurate summary of the statement I gave to [the investigator]." Doc. 82-2 at 1-2.

**Discussion**

With Coleman having conceded summary judgment on her *Monell* claims against the City, four claims remain for disposition: (1) a false arrest claim against Grady under § 1983; (2) an excessive force claim against Grady under § 1983; (3) a state law false imprisonment claim against Grady and the City; and (4) a state law battery claim against Grady and the City.

**I.      Section 1983 Claims**

Grady contends that he is entitled to qualified immunity on Coleman's § 1983 claims. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "When confronted with a claim for qualified immunity, [the court] must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether the right was clearly established at the time of defendant's alleged misconduct." *Ibid*.

Grady correctly concedes that Coleman's right to be free from false arrest and excessive force was clearly established as of September 26, 2008. With respect to excessive force, settled law at the time clearly established that an officer may not use handcuffs in a manner that inflicts unnecessary pain, which can occur when an officer knows either (1) that a particular detainee is susceptible to injury through handcuffing or (2) that an extraordinary amount of pain results from handcuffing and the detainee does not present a particular threat of flight or violence. *See Payne v. Pauley*, 337 F.3d 767, 779-80 (7th Cir. 2003); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1043-44 (7th Cir. 2002); *Mickel v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993) ("An excessive use of force claim could

be premised on [the officer's] handcuffing [the plaintiff] if he knew that she had an injured arm and if he believed that she posed no threat to him."), *superseded by statute on other grounds*. The Fourth Amendment right to be free from false arrest also was clearly established well before September 26, 2008. *See Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993). Therefore, the sole remaining question is whether evidence adduced by Coleman makes out a claims for violation of either or both of those rights.

    A.    **False Arrest**

To prevail on a false arrest claim, a plaintiff must demonstrate that the arrest was made without probable cause. *See McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("Probable cause is an absolute bar to a § 1983 claim for false arrest."); *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) ("in order to survive summary judgment, [the plaintiff] need[s] to raise a genuine issue regarding whether the officers had probable cause to arrest [her]"). "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride*, 576 F.3d at 707. Here, even viewing the evidence in the light most favorable to Coleman, a reasonable jury could not find that probable cause was lacking.

It is undisputed that Grady spoke with Johnson outside of Coleman's hearing. Grady testified that Johnson told him that Coleman had kicked her and that she wished to make a complaint against Coleman for battery. Coleman does not adduce any evidence to dispute Grady's account of his conversation with Johnson. Indeed, the letter Coleman sent to the Chicago Police Department and the complaint she filed with the Independent Police Review Authority admit that she had kicked Johnson. These admissions, while not speaking directly to what Johnson told Grady at the scene, confirm Grady's account of his conversation with

Johnson—though, given the lack of contrary evidence regarding the conversation, no confirmation is necessary.

An officer ordinarily has probable cause based on "[t]he complaint of a single witness or putative victim … unless the complaint would lead a reasonable officer to be suspicious. … And in crediting the complaint of a reasonably believable witness or putative victim, the police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth." *Beauchamp v. City of Noblesville*, 320 F.3d 720, 743 (7th Cir. 2003) (citations omitted); *see also McBride*, 576 F.3d at 707 ("Normally, an officer may base a determination of probable cause on information from the putative victim if the officer reasonably believes that the victim is telling the truth."); *Neiman v. Keane*, 232 F.3d 577, 581 (7th Cir. 2000) ("[c]omplaints from putative victims about alleged crimes generally establish probable cause"); *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998). Here, no reasonable jury could conclude that Grady did not reasonably believe that Coleman had kicked Johnson, which constitutes a battery under Illinois law. *See McBride*, 576 F.3d at 707 (citing 720 ILCS 5/12-3). Grady was entitled to credit Johnson's statement that Coleman had kicked her, and Coleman identifies no evidence that would or should have caused a reasonable officer in Grady's position to suspect that Johnson was lying.

Coleman nonetheless contends that a disputed issue of material fact exists regarding probable cause because there is evidence tending to show that her kicking of Johnson was undertaken in self-defense and therefore justified under Illinois law. The Seventh Circuit rejected precisely this argument in *McBride*, holding that "[t]he existence of a legal justification for battery is not an element of the offense [under Illinois law], but rather is an affirmative defense," and that although an officer "may not ignore conclusively established evidence of the

existence of an affirmative defense, the Fourth Amendment imposes no duty to investigate whether a defense is valid." 576 F.3d at 707 (internal quotation marks and citations omitted). On the record before the court, at the time Grady was on the scene, the evidence indisputably did not conclusively establish that Coleman was justified in kicking Johnson.

Accordingly, because it is undisputed that Johnson told Grady at the scene that Coleman had kicked her, because Grady had no duty to investigate whether Coleman's actions were justified, and because it is undisputed that Grady was not presented with evidence conclusively establishing that Coleman's actions were justified, Grady indisputably had probable cause to arrest Coleman. It follows that the § 1983 false arrest claim fails as a matter of law.

### B. Excessive Force

The Fourth Amendment permits an officer to use reasonable force to effectuate a lawful arrest. *See Stainback v. Dixon*, 569 F.3d 767, 771-72 (7th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). To determine the reasonableness of the force used, the court examines the facts as a reasonable officer on the scene would have viewed them, recognizing "that officers often need to make split-second judgments based on rapidly developing events." *Id*. at 772 (citing *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 685 (7th Cir. 2007)). The degree of force that is reasonable varies based on "the circumstances surrounding the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Ibid*. (quoting *Graham*, 490 U.S. at 396). As the Seventh Circuit explained:

> In some cases, the fact that an act will cause pain or injury will be clear from the nature of the act itself. … In other cases, it may become clear to an arresting officer that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual being placed under arrest. For example, an officer's

> otherwise reasonable conduct may be objectively unreasonable when the
> officer knows of an arrestee's medical problems. However, a reasonable
> officer cannot be expected to accommodate an injury that is not apparent or
> that otherwise had not been made known to him.

*Stainback*, 569 F.3d at 772-73 (citations and footnote omitted). Although this summary of prevailing law comes from an opinion that post-dates Coleman's arrest, it simply reflects preexisting, clearly established law, and thus may be cited in the qualified immunity context.

Simple discomfort from the use of handcuffs cannot support an excessive force claim; nor can greater than ordinary discomfort in circumstances where the detainee does not inform the officer of "a preexisting injury or condition that would be aggravated if he were handcuffed." *id*. at 773; *see also Sow v. Fortville Police Dep't*, __ F.3d __, 2011 WL 477050, at *8 (7th Cir. Feb. 11, 2011); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006). But an excessive force claim must go to a jury when the plaintiff adduces evidence of significant pain resulting from handcuffing under circumstances where the need for restraint was light and where the officers were aware of medical or physical limitations making it more painful than usual for a detainee to be handcuffed in the ordinary course. *See Payne*, 337 F.3d at 779 (jury question presented by tight handcuffing causing numbness in plaintiff's hands); *Walton*, 995 F.2d at 1342 (jury question presented when officer and arrestee disputed whether arrestee informed the officer that she had an injured shoulder).

This case presents the latter situation. Coleman has adduced evidence showing that Grady participated in handcuffing her behind her back despite her request that she be handcuffed in front due to shoulder and back problems, and that Grady then failed to remove the handcuffs when Coleman continued to complain of painful back spasms. Grady contends that summary judgment is appropriate because the pain and injuries Coleman allegedly suffered were not

sufficiently severe, and also because the evidence indicates that he was unaware that Coleman had any particular limitations or was susceptible to injury from being handcuffed in back. But on summary judgment, the court must credit Coleman's version of events—a version in which Coleman (a 55 year-old disabled woman) did not present an immediate threat to Grady or anyone else, in which she posed no discernible risk of flight, in which she informed Grady that she had shoulder and back problems that cause her to suffer significant pain from being handcuffed in back, in which she persisted in complaining about spasms while being transported to the station, and in which the incident caused her sufficiently severe pain and injury. Under prevailing Seventh Circuit precedent, a reasonable jury could (though need not) conclude that Grady's decision to handcuff Coleman in back and keep the handcuffs there despite her continued complaints was excessive force in violation of the Fourth Amendment. *See Stainback*, 569 F.3d at 772 ("our cases indicate that an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury").

## II. State Law Claims

Grady seeks summary judgment on Coleman's state law claims for false imprisonment and battery under § 2-202 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, which provides, "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. The City derivatively claims immunity under § 2-109 of the Act, which

provides that it, as a local public entity, cannot be liable if its employee is not liable. 745 ILCS 10/2-109. Viewing the evidence in the light most favorable to Coleman, summary judgment is appropriate on the false imprisonment claim, but not on the battery claim.

The false imprisonment claim, like the § 1983 false arrest claim, cannot go forward because probable cause indisputably supported the arrest. Settled precedent holds that a willful and wanton claim based on an alleged false imprisonment is defeated if the officer had probable cause to make an arrest. *See Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 320 (Ill. App. 2006); *Boyce v. Fernandes*, 77 F.3d 946, 951 (7th Cir. 1996). Grady therefore enjoys immunity under the Act because, as discussed above, he had probable cause to arrest Coleman. And because he cannot be held liable for this claim, the City cannot either.

The battery claim, however, presents a triable issue of fact. Illinois law holds that "a police officer is not guilty of willful or wanton conduct unless he acted with actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008) (internal quotation marks omitted). "Although willful and wanton conduct consists of more than mere inadvertence, incompetence, or unskillfulness, it need not be an intentional act; rather, it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others." *Ibid*. (internal quotation marks omitted). "Whether an officer acted in such fashion is normally a question of fact to be determined by the jury." *Ibid*. (internal quotation marks omitted). This is a normal case. Accepting Coleman's version of events, the handcuffing and subsequent refusal to remove the handcuffs came on the heels of her request for Grady's name and badge number. Although Grady had probable cause to arrest Coleman, a reasonable jury could (but need not) conclude that the manner in which the handcuffs were placed, and the subsequent refusal to remove the

handcuffs, involved the intentional infliction of pain or, at a minimum, that it reflected a conscious disregard for Coleman's safety. *See ibid*. The battery claim therefore goes forward against both Defendants.

**Conclusion**

Defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted to the City with respect to the § 1983 *Monell* claims. Summary judgment is denied to Grady on the § 1983 excessive force claim, and granted on the § 1983 false arrest claim. Summary judgment is granted to both Defendants on the state law false imprisonment claim, and denied to both Defendants on the state law battery claim. Defendants' motion to strike portions of Coleman's response to Defendants' Local Rule 56.1 statement is denied as moot, as the Local Rule 56.1 disputes either were resolved in Defendants' favor without the benefit of the motion or were immaterial to summary judgment.

April 22, 2011 _____
United States District Judge